**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF                                                          101 WEST LOMBARD STREET
STEPHANIE A. GALLAGHER                                       BALTIMORE, MARYLAND 21201
UNITED STATES MAGISTRATE JUDGE                                        (410) 962-7780
                                                                                   Fax (410) 962-1812

November 7, 2016

LETTER TO COUNSEL

   RE: *Hombre Scott v. Carolyn Colvin;*
      Civil No. SAG-15-3941

Dear Counsel:

  On December 23, 2015, Plaintiff Hombre Scott petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 17, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

  Mr. Scott filed claim for Supplemental Security Income ("SSI") on June 13, 2012. (Tr. 61). He alleged a disability onset date of April 11, 2012. *Id.* His claim was denied initially and on reconsideration. (Tr. 95-100). A hearing was held on July 1, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 25-53). Following the hearing, the ALJ determined that Mr. Scott was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 9-24). The Appeals Council denied Mr. Scott's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

  The ALJ found that Mr. Scott suffered from the severe impairments of degenerative disc disease and neuropathy. (Tr. 14). Despite these impairments, the ALJ determined that Mr. Scott retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 416.967(b) except no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs or ramps; occasional stooping, crouching, crawling or kneeling; and no exposure to hazards such as unprotected heights." (Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Scott could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 19-20).

  Mr. Scott raises four primary arguments on appeal: (1) that the ALJ erred by not finding Mr. Scott's "major depression" to be a severe impairment; (2) that the ALJ failed to determine that Mr. Scott met a Medical Listing; (3) that the ALJ failed to make a function-by-function assessment of mental RFC consistent with SSR 96-8p; and (4) that the ALJ improperly weighed

*Scott v. Colvin*
Civil No. SAG-15-3941
November 7, 2016
Page 2

the opinion of Mr. Scott's treating physician.  Pl.'s Mot. 21-22.  Each argument lacks merit and is addressed below.

### I.    Severe Impairment Issue

Mr. Scott argues that the ALJ erred by not determining that his "major depression" constitutes a severe impairment.  Pl.'s Mot. 12-13.  An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a).  The claimant bears the burden of proving that his impairment is severe. *See Johnson v. Astrue*, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Here, the ALJ thoroughly considered Mr. Scott's depression at step two. (Tr. 14-15).  The ALJ noted that Mr. Scott demonstrated no mental impairments in activities of daily living, has had no episodes of decompensation, and suffers only mild difficulties in the areas of social functioning and concentration, persistence or pace.  (Tr. 15).  The ALJ cited to evidence in the record to support her conclusions regarding the paragraph B criteria. *Id.*  The ALJ also clearly stated the basis of her finding that Mr. Scott's depression was non-severe – namely, because "mild" limitations in two of the four functional areas did not limit Mr. Scott's ability to work. *Id.* Accordingly, the ALJ fairly concluded that the impairment had no more than a *de minimis* effect on Mr. Scott's ability to work. *Id.*  Moreover, even if the ALJ had erred in her evaluation of Mr. Scott's depression at step two, such error would be harmless.  Because Mr. Scott made the threshold showing that his degenerative disc disease and neuropathy constituted severe impairments, the ALJ continued with the sequential evaluation process and properly considered all of the impairments, both severe and non-severe, that significantly impacted Mr. Scott's ability to work. *See* 20 C.F.R. §§ 404.1523, 416.923.  Any step two error, then, does not necessitate remand.

### II.    Medical Listing Issue

Mr. Scott suggests that the ALJ's medical listing analysis violated the Fourth Circuit's mandate in *Fox v. Colvin*, 632 Fed. App'x. 750 (4th Cir. 2015).  Pl.'s Mot. 14-16.  Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  In *Fox*, the Fourth Circuit held that the ALJ's medical listing analysis was deficient because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal requirements to the record evidence.'" *Id.* at 754 (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)).  That is, the ALJ did not apply any findings or medical evidence to the identified disability listings and offered nothing to reveal why he was making his decision. *Radford*, 734 F.3d at 295.  Thus, *Fox* requires that an ALJ provide express analysis, with factual support, to conclude that a medical listing has not been met at step three.  The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error where the evidence of record otherwise demonstrated that the claimant did not meet a listing. *Fox*, 632 Fed. App'x. at 755.

Rather, the *Fox* Court emphasized that it is not this Court's role to "engage[ ] in an analysis that the ALJ should have done in the first instance," or "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Id.* The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review." *Id.*

In the instant case, regarding her findings at step three of the sequential evaluation, the ALJ stated, in relevant part:

> Specifically, I have considered listing 1.04 related to disorders of the spine or the spinal cord. The claimant's medical evidence of record indicates that, despite the presence of degenerative disc disease, the claimant does not have evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis present, and therefore does not meet the criteria of this listing

(Tr. 15). Medical Listing 1.04 is defined as, "Disorders of the spine … resulting in compromise of a nerve root … or the spinal cord. With A. Evidence of nerve root compression …   OR B. Spinal arachnoiditis … OR C. Lumbar spinal stenosis.  20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. In order to meet a Medical Listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). The ALJ's analysis of Medical Listing 1.04 does not run afoul of *Fox*. The ALJ expressly considered the listing's legal requirements of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, applied these requirements to the record evidence, and concluded that Mr. Scott had not supplied evidence satisfying the criteria of this listing.

Furthermore, contrary to Mr. Scott's allegation that the ALJ "failed to address the [June, 2014] MRI of Mr. Scott's lumbar spine in Exhibits 15F and 19F," the ALJ both considered and cited to Exhibit 15F, which is an exact duplicate of Exhibit 19F. Pl.'s Mot. 14;  (Tr. 17, 424, 435). Nor do Exhibits 15F and 19F contain any findings that refute the ALJ's conclusion with respect to Listing 1.04. Mr. Scott's suggestion that the ALJ did not mention the October, 2013 x-rays of his lumbar spine and thoracic spine is also incorrect.  Pl.'s Mot. 14. The ALJ made several references to the information contained at Exhibit 13F, including Mr. Scott's thoracic spine examination, and noted its results were "within normal limits other than questionable left-sided trachea compression."  (Tr. 17, 393-422). Mr. Scott also posits that the ALJ failed to discuss the opinion of Cynthia Corbin, CRNP, regarding whether Mr. Scott met the criteria of Medical Listing 1.04A.  Pl.'s Mot. 14. However, the ALJ expressly discusses this point and ascribed little weight to Ms. Corbin's opinion regarding Medical Listing 1.04A because it was "generally inconsistent with the claimant's medical evidence of record showing that the claimant is limited to light work with occasional postural limitations."  (Tr. 18).

Lastly, Mr. Scott's claim that the ALJ should have specifically discussed Medical Listings 11.14 and 12.04 is without merit. An ALJ's "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample

evidence in the record to support a determination that the claimant's impairments meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d. 629, 645 (D. Md. 1999) (citing *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986)).  Since the ALJ reasoned on the basis of the record evidence that Mr. Scott's depression was not a severe impairment, it follows that the condition also lacks the severity to trigger analysis under Medical Listing 12.04.  (Tr. 14, 17-18).  As to Medical Listing 11.14, by Mr. Scott's own admission, there is minimal if any evidence to support a finding that Mr. Scott's neuropathy consists of "[d]isorganization of motor function in two extremities … resulting in an extreme limitation … in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities … [OR] marked limitation … in physical functioning" in one of four prescribed areas.  Pl.'s Mot. 15. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 11.14.  Accordingly, the ALJ had no obligation to consider either medical listing.

Because the ALJ provided adequate analysis with supporting evidentiary citations throughout the opinion to the only medical listing triggered by the record evidence, there is no basis for remand.

### III.    Function-by-Function Assessment of Physical RFC

Mr. Scott argues that the ALJ did not satisfy the exertional capacity requirement of SSR 96-8p because she failed to "make specific findings as to how long [Mr. Scott] can sit, how long he can stand, and how much he can lift and carry occasionally and frequently."  Pl.'s Mot. 16.  I disagree.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence..."  SSR 96-8p, 1996 WL 374184, at *7.  "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. Here, the ALJ provided a narrative discussion of the evidence of record.  (Tr. 16-18).  The ALJ cited April, 2012, January and February, 2013, and January, 2014 medical records from Parkwest Health System reflecting Mr. Scott's "fully normal physical examination" in each instance. (Tr. 17).  The ALJ ascribed some weight to the opinion of consultative examiner Chi-Shiang Chen, M.D., who "found that the claimant had normal physical … examination other than some issues with walking on heels and motor weakness" and otherwise "did not provide functional limitations." *Id.*  The ALJ noted the findings of Brent Fox, M.D. "who limited the claimant during June 2014 to less than sedentary exertion with significant restrictions in stooping, bending, climbing and crouching."  (Tr. 18).  However, the ALJ assigned this opinion little weight because it "is generally inconsistent with the claimant's medical evidence of record showing that the claimant is limited to light work with occasional postural limitations." *Id.*  The ALJ also "assign[e]d little weight to the 2012 and 2014 findings of Cynthia Corbin, CRNP, who limited the claimant to less than sedentary exertion with other limitations, but could not document how often the claimant would have to lie down or take breaks." *Id.*  The ALJ noted that Ms. Corbin also found that Mr. Scott "could not stoop, bend, climb or crouch due to back

pain and neuropathy." *Id.* The ALJ determined that Ms. Corbin's opinion was not consistent with Mr. Scott's medical evidence of record. *Id.* At the same time, the ALJ gave little weight to the opinions of State agency physical consultants, W. Hakkarinen, M.D., and A. Serpick, M.D., "who found no severe physical impairments," because these conclusions were also contradicted by Mr. Scott's medical records. *Id.* The ALJ concludes her step four narrative by reiterating her finding that "the residual functional capacity articulated above represents the claimant's limitations in performing basic work related activities." *Id.*

By incorporating the definition of light work as defined in 20 C.F.R. 416.967(b) into her definition of Mr. Scott's RFC, the ALJ expressly adopted those exertional capacity limits. This means that the ALJ believes Mr. Scott is capable of "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," "a good deal of walking or standing," "some pushing or pulling," and "sedentary work … for long periods of time [unless there are additional limiting factors]," 20 C.F.R. 416.967(b), where "frequent" is defined as "off and on, for a total of approximately 6 hours out of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. By reference, then, the ALJ set out specific findings as to Mr. Scott's ability to sit, stand, lift, and carry consistent with light work, limited only by the exceptions taken to climbing, stooping, crouching, crawling, and kneeling. The ALJ's RFC assessment is consistent with the record evidence which found that Mr. Scott presented for "normal physical examinations" from 2012 to 2014, and properly accounts for the limitations relating to climbing, stooping, crouching, crawling, and kneeling provided for in the medical opinions given some weight. Where the ALJ attributed little weight to a medical opinion discussing Mr. Scott's exertional capacity and provided a basis in the record evidence for doing so, the ALJ did not then err by failing to account for those unsupported limitations in Mr. Scott's RFC.

Lastly, any inconsistency between the ALJ's determination that Mr. Scott cannot perform his past relevant light work as a cashier, but can perform other light work going forward, is harmless. Pl.'s Mot. 18. The ALJ relied on the VE's testimony regarding past relevant work. (Tr. 19). The VE testified that Mr. Scott retained the RFC to perform his past relevant work, but also testified that a hypothetical individual with Mr. Scott's RFC but further limited to simple, routine, repetitive tasks could not work as a cashier because this job is semi-skilled. (Tr. 48-49). Since the ALJ did not eventually limit Mr. Scott to simple, routine, repetitive tasks, her reliance on the VE's testimony regarding such a hypothetical individual appears to be misplaced. Indeed, later in the opinion, the ALJ noted that "[t]he vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: … cashier." (Tr. 19). Ultimately, as the Commissioner correctly argues, the ALJ's opinion is unambiguous with respect to Mr. Scott's ability to perform light work subject to exceptions for climbing, stooping, crouching, crawling, and kneeling. Def.'s Mot. 24.

For these reasons, the above narrative sufficiently constitutes the function-by-function assessment required by SSR 96-8p. Therefore, I do not find remand on this point necessary.

### IV.     Treating Physicians' Opinions

Mr. Scott contends that the ALJ assigned inadequate weight to the opinion of Mr. Scott's treating psychiatrist, Marlyn Martin, treating CRNP, Ms. Corbin, and treating pain management specialist, Dr. Fox. Pl.'s Mot. 19-21.  A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590.  If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  The ALJ must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, 1996 WL 374180 at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Contrary to Mr. Scott's assertion, the ALJ appropriately evaluated the treating physicians' opinions.  The ALJ's proper treatment of the opinions of Ms. Corbin and Dr. Fox are discussed in Section III above and reincorporated here by reference.  As to Dr. Martin, the ALJ gave little weight to Dr. Martin's opinion that Mr. Scott had "marked limitations in all domains both in 2012 and 2013" because these findings were not consistent with the medical evidence of record. (Tr. 17).  Specifically, the ALJ noted that "[t]he claimant does not have more than mild depression, has never had a hospitalization admission for depression, and does not have extensive psychiatric treatment as of July of 2012, the date of Dr. Martin's initial findings." *Id.* As it is supported by the record evidence, I find that the ALJ sufficiently justifies her decision to accord only "little weight" to the three treating physicians' opinions.

Mr. Scott also argues that the ALJ failed to consider the factors outlined in 20 C.F.R. § 20 CFR 404.1527(d) when assigning weight to his three treating physicians' opinions.  The regulations require an ALJ to assess several factors when determining what weight to assign to the medical opinions presented.  20 C.F.R. §§ 404.1527(d), 416.927(d).  These factors include: the examining relationship between the physician and the claimant; the treatment relationship between the physician and the claimant; the specialization of the physician; the consistency of a medical opinion with the record as a whole; and the extent to which a medical opinion is supported by evidence.  20 CFR §§ 404.1527(d)(1)-(5), 416.927(d)(1)-(5).  Upon review of the record, I find that the ALJ cited each factor required under the regulations.  Regarding Dr. Martin, the ALJ identified her examining and treatment relationship and area of specialty as "the claimant's psychiatrist" whose "initial findings" date to July 2012 and concluded that Dr. Martin's findings of "marked limitations" were "*inconsistent with the claimant's medical evidence of record* even as of 2013 given that the claimant does not have extensive psychiatric

*Scott v. Colvin*
Civil No. SAG-15-3941
November 7, 2016
Page 7

treatment." (Tr. 17-18) (emphasis added). As to Ms. Corbin and Dr. Fox, the ALJ fulfilled the requirements of the regulation by reference in the opinion to Exhibits B7F, B12F, B16F, and B17F. (Tr. 18). Exhibits B7F, 16F and 17F identify the time period of Ms. Corbin's examining and treatment relationship with Mr. Scott as January 6, 2010 to June 2, 2014, and her area of specialty as primary care. (Tr. 372-74, 429-33). Exhibit 12F reflects the time period of Dr. Fox's examining relationship with Mr. Scott as January 16, 2014 to June 5, 2014, and his area of specialty as pain management. (Tr. 393-96). As previously discussed, the ALJ ascribed both Ms. Corbin and Dr. Fox's opinions "little weight" because they were inconsistent with and unsupported by the medical evidence of record. (Tr. 18). Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Mr. Scott's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Considering the entirety of the ALJ's RFC analysis, I find that the ALJ properly applied the regulations in assigning weight to Dr. Martin, Ms. Corbin, and Dr. Fox's opinions, and that her findings are supported by substantial evidence.

For the reasons set forth above, Mr. Scott's Motion for Summary Judgment (ECF No. 17) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge